All right, we'll go back on the record. Our last case for the day is Quisenberry v. Ridge, No. 24-1017. May it please the court, my name is Wayne Ely, counsel for... We apologize to both counsel about the echoing here. Oh, that's okay, Your Honor. I'll try to speak slowly. No, no, it's all good. You speak at whatever rate is comfortable for you. May it please the court, I'm Wayne Ely, counsel for Mr. Quisenberry, the plaintiff below and the appellant in the matter before Your Honors. Your Honors, no matter how you slice it, the defendant has a problem here. He argued on summary judgment that he was entitled to immunity because he was following a court directive. Then Your Honors asked for supplemental briefing on whether or not he was performing a judicial or quasi-judicial function. He was doing none of that. He ignored directives from two different judges, and we outlined that in our briefing. He indicated Judge Solomon, who was the judge assigned to Mr. Quisenberry's case, told him to have Mr. Quisenberry picked up. But Judge Solomon never said that. Judge Solomon testified in his deposition that he never authorized the warrant. But Solomon said that he told him, if you have that procedure, act on it. And the court made a finding of fact regarding that. Judge Emery issued a directive when she established the procedure, and Solomon furthered that directive in advising Mr. Ridge to act upon the pre-signed warrant procedure. Don't we have to find that that's clear error on the part of the district court if we're to do anything with that? You may have to, and it is, because if you look at Judge Solomon's testimony, he says he told Mr. Ridge to make contact with another judge to get a bench warrant signed, which takes the pre-signed warrant out of the equation. He couldn't possibly have meant both. Use the pre-signed warrant and also get another warrant. He also said that he was aware of the procedure for the pre-signed warrants, but he did not give Mr. Ridge permission to arrest Mr. Quisenberry. That's Appendix 225 at lines 15 to 17. Well, no, he didn't give permission. He wasn't asked to give permission. He told him, if you have that procedure, act on it. But that puts Mr. Ridge right back into the same problem. He's not a judge. He made no finding of probable cause, and no judge made a finding of probable cause here. And that is simply a violation of the Fourth Amendment. Not to get into clearly established, that goes into his argument about punitive damages and Eleventh Amendment. There was no basis for Mr. Ridge to do this. This is the second time he had ever done it. This was not a procedure that was used all the time. Excuse me, didn't Mr. Ridge concede that Judge Emery had issued the warrant? He says that Judge Emery had pre-signed the warrant. And in his deposition, he denied communicating with Judge Emery, but Judge Emery says she told him to call Judge Solomon. So there are issues of disputed fact with that as well. Well, Judge Solomon was not issued a warrant. I'm sorry, Your Honor. Mr. Ridge himself did not issue a warrant. No, he had a pre-signed warrant that he simply released. To use his words at the August 15, 2019, bail hearing, he said, I released a warrant for Mr. Quisenbury. We have warrants pre-signed and I released it. He used his own discretion to do that. He's not a judge. And this goes back to the reason the Fourth Amendment was written to begin with. The concern by the framers about arrests of this type by various officials without a judge being involved. But again, as Judge Rendell pointed out on page 227, Judge Solomon does say you have a bench warrant. You should act upon it. That's not judicial direction. No, not when he says I did not give permission to arrest him. Appendix 225 lines 15 to 17. Well, he didn't give permission. He wasn't asked about permission. I think you're taking the concept of permission a little bit out of context there. But he also says I don't believe I authorized it. But what he specifically said, do you doubt that he said what he said? No. If he said what he said, how is it not pursuant to a judicial function? Well, it doesn't really take the defendant off the hook. The defendant knows he has not had a probable cause determination. But if it was a quasi-judicial act, he has immunity, whether you say it's a violation of the Fourth Amendment or not. But there was no quasi-judicial act here. Okay, we're going in circles. It's not his job function to make those decisions, I guess is my point, to take it out of the circle. He had no business releasing warrants and having someone arrested. This warrant was the functional equivalent of no warrant at all. Judge Roth? I'm sorry, Judge. Do we have to consider then his actions under qualified immunity rather than quasi-judicial immunity? Correct, Your Honor. And under qualified immunity, there was a – Do we have to consider whether the warrant – well, we would not make that determination. We would send it back to the district court. And the district court would then have to determine whether he was justified in relying upon the warrant as a properly issued warrant in order to claim qualified immunity. Correct, Your Honor. I don't believe the court below made that determination because they found that there was judicial immunity or quasi-judicial immunity. But I believe Your Honor is correct. At a minimum, he could argue qualified immunity. I certainly don't think he could establish it, but that's probably not an issue for today. Well, it would depend a great deal on how you define the interest and the nature of the clearly established law. Correct, Your Honor. Because this is a very unique situation. It is very unique. How would someone know in this particular situation, especially with exigent circumstances or the emergency situation, would you know in a situation where you have someone who is this type of an offender and you have something like this in an emergency, would Ridge know that in that instance it was improper and violates the Constitution? I mean, it's a very strange way of defining it, but someone would have to do it, whether we do it or the district court. And there are facts to demonstrate that this situation gave him enough notice that there was no reason. There was no exigent circumstances. The plaintiff had used an interchange that he has testified Mr. Ridge specifically told him he could use. Well, but we don't know whether the alert identified that or the alert just said he's impinging upon the territory. Yes, we do not know that. But Mr. Ridge, there was no emergency here. He was not doing anything that created an exigent circumstance. Well, as a matter of fact, but Ridge wouldn't have any way of knowing that. Well, but regardless, there's no basis for just releasing a warrant. Mr. Ridge, any other parole officer, probation officer, police officer, is on notice that there has to be probable cause for a warrant. Do you agree that if what Judge Solomon did was equivalent to telling Ridge to issue the warrant, that he would have quasi-judicial immunity? Not necessarily, because there's some case law in our brief that even where a warrant has been issued, if an officer knows that there's something wrong with it, that does not automatically exempt them from liability. To the extent that there's some ambiguity in your view that what exactly Judge Solomon did, during the bond revocation hearing, I'm quoting from page 602, he stated that he directed the warrant to be issued. Judge Solomon directed that the warrant be issued. Doesn't that help clarify what exactly happened? It creates a bit of an issue, because Judge Solomon testified somewhat differently, and his recollection at the deposition was different, because he specified, I don't believe I authorized it. And I believe the word used in the hearing on the August 15, 2019 hearing was authorized. He said, I directed that the warrant be issued. Right. But in his deposition, he said that, I want to make sure I read this.  I'm sorry? You should act upon it. You should act upon it. And he had never heard of the procedure before. It was not my warrant, and, quote, I don't believe I authorized it. But don't we have before us the district court's statement that Judge Solomon furthered that directive in advising to act upon it, which is a finding of fact. We'd have to say that that was clearly erroneous. And it was. Based on the testimony, and obviously on summary judgment, the plaintiff gets all inferences in his favor. There's a clear difference between what Judge Solomon said at the hearing and what he said in his deposition. He may recall it differently later. I don't know. But the fact is, for purposes of summary judgment, he contradicted Mr. Ridge, who said, Judge Solomon told me to have him picked up. Any fair reading of Judge Solomon's testimony, for summary judgment purposes, shows that that is a dispute of fact at a minimum. The benefit of that should be given to the plaintiff. Your Honor, there were several other issues raised by Mr. Ridge that were not reached by the district court, such as a lack of punitive damages in this case. I believe there's no basis for that argument at all. Individuals can certainly be subject to punitive damages for constitutional violations. There's no 11th Amendment immunity. He's an individual. And the qualified immunity that I believe Judge Roth already addressed, he cannot establish that either under the facts of this case, although it may have to go back for that purpose. But he is certainly not entitled to judicial immunity, quasi-judicial immunity, anything of the sort. Your Honors had requested supplemental briefing on Wilson v. Rackmill, and we did submit a supplemental brief on that. There was no quasi-judicial act here. All he did was release a warrant that had already been signed. He should have been on notice that that was a Fourth Amendment violation. And I believe that, as we explained in the brief, that under the facts as they were in Wilson and the way the court has read Wilson, there's no basis for immunity under that case. And unless there's any other questions, I'll allow it. What do you make of the Russell case, our case in the Third Circuit? I think Russell addressed Wilson, if I remember correctly. I don't think the facts here are square with Russell. And I think, as I outlined it, there was no investigative function or executive function in that case. In this case, there were no adjudicatory duties carried out by Mr. Ridge. He didn't make any adjudication. He never said he made a probable cause finding. He took a warrant, gave it to the police, and the police arrested the plaintiff. But we said quasi-judicial immunity extends to action taken at court's order. Right, but here we have him actually disobeying the directives of two courts, if we read all the facts in favor of the plaintiff, since we're on summary judgment. You know, Judge Solomon says, I did not tell him to have the guy picked up. I did not authorize the warrant. And Judge Emery testified she told Mr. Ridge to call Judge Solomon. And with both of those directives, he decided to just release the warrant. So I think that, again, demonstrates he acted without any authority at all. Unless there's any other questions, I've reserved two minutes for rebuttal. Okay, all right. Thank you, counsel. Thank you. And we'll hear from your others. Good morning, Your Honors. Sarah Cobbs on behalf of the appellee, John Ridge. Just to quickly give some background information regarding this case, this was a policy that was put in place by Judge Emery of Washington County back in 2018. This policy arose from the unfortunate death in two different domestic violence cases. It also resulted because a new warden had taken over the administration of the Washington County Jail. That new warden required a signed warrant rather than a verbal warrant when the police were bringing in people that were arrested either over the weekend or in the evening hours. So Judge Emery instituted this whole policy wherein she did the buddy clips where Tier 3 offenders would be placed on a monitoring system. The victims were given devices that they could get alerts if it was two-mile radius around their home, if the buddy clip alerted in that area. We're aware of all this.  Can you get to the heart of the matter, which is, was this pursuant to a court order? Absolutely. So I will respectfully disagree with my colleague's opinion that the judges did not direct this warrant to be acted upon. I believe Judge Solomon was very clear, not only in the hearing that occurred after Mr. Quisenberry was picked up, that he had authorized this warrant, but also during his testimony, he was asked specifically. That testimony? Judge Solomon's testimony, yes. When he was asked about the warrant, he did say, this wasn't my warrant. And my understanding of his testimony was he was saying he had not signed the warrant, which he did not. But he did say, I told Mr. Ridge, if there's a policy in place in Washington County, to act accordingly. Mr. Ridge also spoke with Judge Emery when they were at the event together, and Judge Emery also directed him, she said, release the warrant, but run it past Judge Solomon, which is what he did. So you have Judge Emery saying, release the warrant that was already signed, as per their policy, and then you have Judge Solomon saying, act pursuant to the policy that Judge Emery put in place. And that is exactly what Mr. Ridge did. Judge Rolfe has a question. Oh, I'm sorry. Was it a valid warrant in the first place, because Judge Emery had made no finding of probable cause? I would just – The warrant that existed was not a valid warrant, was it, until someone made a finding of probable cause. Who made that finding? I would say that both of the judges were advised of the facts. They were both advised that Mr. Quisenberry had entered the zone within Judge Costanzo's house. But Judge Emery had recused himself from the case, right? Correct. And that, I believe, is why she advised Mr. Ridge to run it past Judge Solomon as well, because he was then the sitting judge. Judge Solomon was also provided with the facts that Mr. Quisenberry had entered the zone of prohibition around Judge Costanzo's house and that his buddy, Clip, had alerted. And that was then when he said, act upon the procedure you have in place and issue that pre-signed warrant. So Judge Solomon – The warrant that existed was not a valid warrant. Judge Solomon – I will respectfully disagree, Your Honor. Judge Solomon was going to issue a warrant and, in fact, told Mr. Ridge to go and seek out a judge that could sign the warrant. That is when he was advised that this procedure was already in place and they had a signed warrant. And that was when he said, go ahead and issue it. If Judge Solomon had, in fact, issued the warrant, he could not be sued for the unconstitutionality of that issuance. The question here is whether Ridge can be sued for the unconstitutionality of that warrant. So the validity of the warrant ends up being beside the point. It's just a question of who can be sued for this and do they have immunity. And so I guess your position is if Solomon couldn't be sued, if he did it, Ridge shouldn't be sued either because it's quasi-judicial. That's correct. And I believe counsel had also made the statement that it wasn't in his job capacity. It wasn't part of his job function. But the policy enacted by Judge Emery in 2018 made it a part of his job function. She bestowed the ability to use his discretion at issuing these warrants when she instituted that policy. As a norm of the court. I'm sorry. As a norm of the court. Yes. Yes. So at that point in time, was it a normal, everyday function of his job? No. As counsel said, this is only the second time he's ever had to do it. But that policy that was enacted by Judge Emery, in fact, gave him, in his job capacity, the ability to use his discretion and issue warrants as he saw fit when the offender violated the terms of his probation. Which is what we had here. Could he do that under Pennsylvania law? Issue a warrant? I'm sorry. Say that again. Could he, under Pennsylvania law, issue a warrant as a pre-trial services officer? I believe, based on the policy enacted by Judge Emery, she conveyed as an arm of the court that authority to do so. And, again, that's not really the issue that was raised at this point in time. Counsel didn't make allegations that this was a false arrest or anything like that. The only allegations, in turning to the supplemental brief that was requested by Your Honors, under the Wilson case, you have to look at the allegations that are campaigned in the complaint. And the only allegation that we have in this complaint is the issuance of a warrant. And that has been determined to be a purely adjudicatory act by the Supreme Court. And, as such, I would argue that under the Wilson case, the only allegations that were made against Mr. Ridge were adjudicatory in nature. We don't have anything like you had in the Wilson case where he was calling and investigating and making notes. That's not alleged in this complaint. The only thing alleged in this complaint is issuing a warrant. Let me ask you a question about this, something I wasn't really aware of, this pre-signed warrant procedure. Is this something that's highly prevalent? Is it done here in Pennsylvania or elsewhere? I don't believe so. I have not run across it anywhere else. And I can tell you that the practice was discontinued once a new warden took over the local jail and went back to accepting verbal warrants. So it's no longer continuing today? Correct. So the normal practice would be they'd just go out and find the guy and arrest him? I think they would call the judge and say, hey, he violated. The judge would say, go pick him up, and they would pick him up, was their standard practice. Without a warrant as such. And I would also just quickly raise the argument. It was addressed in one of the first arguments that Your Honors heard, is that you can uphold an appeal on any grounds. Both parties have raised the other issues that Judge Ranjan did not address in his order, such as the qualified immunity and also the sovereign immunity. Our position has always been that even if quasi-judicial immunity does not apply to Mr. Ridge, which I do believe under these facts it does, that the qualified immunity would also apply to him, as well as sovereign immunity. And I believe counsel took the position regarding the sovereign immunity that he was sued in his individual capacity, and therefore sovereign immunity can apply. But the court has found that just a mere indication of an individual capacity in a complaint is not necessarily determinative on whether a plaintiff is being sued, or I'm sorry, a defendant is sued in his personal versus professional capacity. And that's the Osrazynski case. And I believe here, if we look at the totality of the evidence that's been adduced, there has been nothing that has suggested that Mr. Ridge acted in any way other than as a parole officer picking up someone that was violating the terms of his parole. There's been nothing to suggest that this was a personal vendetta, that this was some grudge, that this was something he was acting in furtherance of a personal claim against Mr. Quisenberry. So I would also argue that sovereign immunity should also apply here if Your Honors aren't inclined to apply quasi-judicial or the qualified immunity. Let me insert here, he was not acting as a parole officer. He was acting as a pre-trial officer. And parole officers in Pennsylvania have the ability to issue a warrant. The pre-trial officers do not. Doesn't that make a difference? I apologize. I misspoke, Your Honor. I think that to go back to the – are you speaking in regard to the 11th Amendment, the sovereign immunity, or going back to the original argument for quasi-judicial? I'm going back to the original argument for quasi-judicial. That as a pre-trial services officer, he did not have authority to issue a warrant. I believe he was acting as a probation officer for Mr. Quisenberry while he was awaiting. So, yes, a pre-trial officer. He was not on probation. This was a pre-trial services situation, and he was acting as a pre-trial services officer. I understand, Your Honor. Yes, I would agree with you in saying that Mr. Quisenberry had not yet pled guilty or had been found guilty of the charges against him. I do believe that the – again, turning back to Judge Emory's policy that she put in place, just she had bestowed in very specific situations the ability for these officers of the court to some extent, because I believe they were reporting to the court administration, which then was reporting to the judge. So they were classified as state employees, which is, again, going to my 11th Amendment argument. But, yes, I would say that Judge Emory, through her institution of that policy, gave them the ability to act upon at their discretion a warrant that she herself had signed. Okay. If there's nothing else, we thank you. Thank you, Your Honors. And we'll hear rebuttal from the appellant. Let me ask you a question. You talk about the fact that there was no probable cause, but you agree, do you not, that Judge Solomon, if he had done this, would be protected by judicial immunity, correct? Judge Solomon? Yes. Yes.  Absolutely. The issue isn't was there a constitutional violation. The issue is who is immune. Correct. So if we were to find that the conduct of Ridge was pursuant to a court order and as a function as part of a court function, if you will, then that ends the question of whether he can be sued. The fact that the warrant was invalid or may have been invalid really doesn't enter into it. That would be putting the cart before the horse, because you admitted that Solomon couldn't be sued for the unconstitutionality. So it flows that neither could Ridge if we find it was quasi-judicial. Well, if you look at Sherwood v. Mulvihill, which is 113 F. 3rd 396, this court decided that in 1997, an arrest warrant issued by a judge does not in and of itself insulate the officer arresting the individual from liability. No, but it insulates the judge. So if we find that Ridge was acting as a judge quasi-judicial, that insulates him. Well, he didn't make a probable cause finding. You only get to that if you have determined that he really isn't entitled to immunity. Well, he had no right to make a probable cause finding. As Judge Roth pointed out, there was no probable cause finding in this case. But what if Ridge wasn't in the case and it was only Solomon? Then it doesn't matter. Well, Solomon was a judge. That's the difference. But you're missing the fact that if we conclude that Ridge was acting and would have quasi-judicial immunity because his acts were part of a judiciary function, that ends the case. But under the facts we have, that can't be the result because Ridge disobeyed two directives. I'm saying if we were to accept. Validity is beside the point. If he had properly had a probable cause finding by a judge, he wouldn't be in the case. But that never happened. And as Judge Roth asked, who made a probable cause finding here? Counsel had no answer because no one made a probable cause finding. But you only get to pursue that against him if he doesn't have the immunity. Correct. But the facts show he's not entitled to that immunity. All he did was release a piece of paper. But if we conclude that that was a judicial function pursuant to a court order such that he would have quasi-judicial immunity, we can't proceed against him. You can't proceed against him. But the facts don't allow you to reach that. That's my point. On summary judgment, we get every reasonable inference from those facts. And as Judge Roth also pointed out, this was a pretrial case. And Mr. Ridge did not have the authority to issue one. It was bond revocation. It was a bond revocation, but he'd been convicted of nothing. And he's entitled to a higher level of protection as a pretrial trial detainee. And, again, there was no probable cause finding. Counsel doesn't know who made it. I don't know who made it because one was never made. The bottom line is it's clearly established that the Fourth Amendment requires probable cause for an arrest. Mr. Ridge knew that. So their arguments going back to some of the issues that the trial judge didn't reach really have no merit either. There's no basis here for even qualified immunity because this is a clearly established right going back to 300 years. I mean, this is not something new. It was decided in a building a block away from here a long time ago. Well, that's correct. But if only Judge Solomon were in the case, we couldn't proceed against him, correct? Well, no, but judges are entitled to a much higher level of immunity. But that's what quasi-judicial immunity is all about. It's insulating people who perform that similar function. It gives them the same cloak of immunity that a judge would have. But not people who disobey what the judge tells them, and that's what Mr. Ridge did here. I see my time is up unless there's any other questions. Judge Roth, do you have anything more? Nothing further. Thank you. Okay, thank you. And thank you, counsel. We thank counsel for their excellent briefing and oral argument today. We will take the case under advisement.